No. 18-5093

# In the United States Court of Appeals for the District of Columbia Circuit

———

Rochelle Garza, as guardian ad litem to unaccompanied minor J.D., on behalf of herself and others similarly situated, et al.,

Plaintiffs-Appellees,

*v.*

Alex Michael Azar, et al.,

Defendants-Appellants.

———

On Appeal from the United States District Court for the District of Columbia

———

## BRIEF FOR THE STATES OF TEXAS, ARKANSAS, LOUISIANA, MICHIGAN, MISSOURI, NEBRASKA, OHIO, OKLAHOMA, SOUTH CAROLINA, WEST VIRGINIA, AND THE COMMONWEALTH OF KENTUCKY, BY AND THROUGH GOVERNOR MATTHEW G. BEVIN, AS AMICI CURIAE IN SUPPORT OF APPELLANTS

———

Ken Paxton
Attorney General of Texas

Jeffery C. Mateer
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548, Mail Code 059
Austin, Texas 78711-2548
scott.keller@oag.texas.gov
(512) 936-1700

Scott A. Keller
Solicitor General

Kyle Hawkins
Assistant Solicitor General

David J. Hacker
Special Counsel for Civil Litigation

# Table of Contents

Page

Index of Authorities ................................................................................ iv

Interest of Amici Curiae.......................................................................... 1

Introduction ............................................................................................ 3

Argument ................................................................................................ 4

I.    Unlawfully-Present Aliens with Virtually No Connections to
       the United States Have No Constitutional Right To An
       Elective Abortion.......................................................................... 4

       A.    The Court Should Apply the Supreme Court's Long-
              Settled "Substantial Connections" Test, Which
              Provides That the Degree of Connections to This
              Country Determines the Degree of Fifth Amendment
              Rights Accorded to Aliens. ......................................... 4

              1.    The Constitutional Rights of Aliens are Determined
                     by a Sliding Scale Based on the Degree of
                     Connections the Alien Has to the Country. ....................... 5

              2.    Unlawfully-Present Aliens With Virtually No
                     Connections to the Country Lack the Panoply of
                     Affirmative Liberty Rights that Citizens and
                     Lawfully-Present Aliens Possess, Although They Do
                     Have Baseline Procedural Protections and the Right
                     to be Free from Gross Physical Abuse................................ 7

       B.    The Operative Complaint Confirms that the Aliens At
              Issue Here Have No "Substantial Connections" to
              This Country, and Therefore Have No Right to an
              Elective Abortion........................................................ 14

II.   This Court Should Apply the "Substantial Connections"
       Test in Reviewing the Decision Below. ............................................15

       A.    The Court Has a Duty to Apply the Correct Law. ...................16

       B.    The "Substantial Connections" Test Is Widely Cited
              and Applied As Controlling....................................................16

Conclusion ................................................................................................ 22

Certificate of Service ............................................................................... 23

Certificate of Compliance ........................................................................ 23

# Index of Authorities

Page(s)

**Cases:**

*Arizona v. United States*,
    567 U.S. 387 (2012) ................................................................. 1, 21

*Atamirzayeva v. United States*,
    524 F.3d 1320 (Fed. Cir. 2008) ............................................. 17

*Castro v. Cabrera*,
    742 F.3d 595 (5th Cir. 2014) ............................................. 8, 9, 15

*Citizens United v. FEC*,
    558 U.S. 310 (2010) ................................................................. 10

*Demore v. Kim*,
    538 U.S. 510 (2003) ......................................................... 9, 11, 15

*Galvan v. Press*,
    347 U.S. 522 (1954) ................................................................. 10

*Garza v. Hargan*,
    874 F.3d 735 (D.C. Cir. 2017) (en banc) (per curiam) ................. 5, 8, 16

*Garza v. Hargan*,
    No. 17-CV-02122, 2018 WL 1567600 (D.D.C. Mar. 30, 2018) ............... 3, 12, 14

*Gonzales v. Carhart*,
    550 U.S. 124 (2007) ................................................................. 1

*Ibrahim v. Dep't of Homeland Sec.*,
    669 F.3d 983 (9th Cir. 2012) ............................................... 7, 16

*Jean v. Nelson*,
    472 U.S. 846 (1985) ................................................................. 12

*Johnson v. Eisentrager*,
    339 U.S. 763 (1950) ......................................................... 6, 8, 15

*Kleindienst v. Mandel*,
    408 U.S. 753 (1972) ................................................................. 10

*Kwai Fun Wong v. United States*,
    373 F.3d 952 (9th Cir. 2004) ................................................. 14

*Landon v. Plasencia*,
    459 U.S. 21 (1982) .............................................................. 6, 8

*Lynch v. Cannatella*,
    810 F.2d 1363 (5th Cir. 1987) ................................................. 8

*Massachusetts v. United States*,
    333 U.S. 611 (1948) .............................................................. 16

*Mathews v. Diaz*,
    426 U.S. 67 (1976) ............................................................. 9, 14

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) (per curiam) ........................................... 4

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010) .............................................................. 10

*Meachum v. Fano*,
    427 U.S. 215 (1976) ............................................................... 4

*Nat'l Council of Resistance of Iran v. Dep't of State*,
    251 F.3d 192 (D.C. Cir. 2001) ............................................... 17

*Planned Parenthood of Se. Pa. v. Casey*,
    505 U.S. 833 (1992) .............................................................. 13

*Plyler v. Doe*,
    457 U.S. 202 (1982) ........................................................... 5, 14

*R.I.L-R v. Johnson*,
    80 F. Supp. 3d 164 (D.D.C. 2015) ......................................... 13

*Sibron v. New York*,
    392 U.S. 40 (1968) ................................................................ 16

*Torres v. Puerto Rico*,
    442 U.S. 465 (1979) ........................................................................16

*Trump v. Int'l Refugee Assistance Project*,
    137 S. Ct. 2080 (2017) (per curiam) ............................................. 6

*U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*,
    508 U.S. 439 (1993) ........................................................................16

*United States v. Carpio–Leon*,
    701 F.3d 974 (4th Cir. 2012) ...................................................... 10

*United States v. Flores*,
    663 F.3d 1022 (8th Cir. 2011) (per curiam) ............................... 10

*United States v. Huitron-Guizar*,
    678 F.3d 1164 (10th Cir. 2012) ...................................................17

*United States v. Meza-Rodriguez*,
    798 F.3d 664 (7th Cir. 2015) ................................................ 7, 10, 16

*United States v. Portillo–Munoz*,
    643 F.3d 437 (5th Cir. 2011) *as revised* (June 29, 2011) ................................. 10, 17

*United States v. Verdugo-Urquidez*,
    494 U.S. 259 (1990) ........................................2, 5, 6, 8, 10, 14, 15, 18

*United States v. Vilches-Navarrete*,
    523 F.3d 1 (1st Cir. 2008) ........................................................9, 17

*Winter v. NRDC*,
    555 U.S. 7 (2008) ........................................................................ 4

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ..............................................................5, 7, 9, 12

## Other Authorities

Brief and Short Appendix of Plaintiff-Appellee, *United States v. Meza-Rodriguez*,
    798 F.3d 664 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1655 (2016)
    (No. 14-3271), 2015 WL 2064443, at*13-*15.....................................20

Brief for Appellee United States, *United States v. Raya-Vaca*,
    771 F.3d 1195 (9th Cir. 2014) (No. 13-50129), 2013 WL 6221846, at
    *13–15 ...................................................................................................19

Brief for Appellee, *United States v. Kole*,
    164 F.3d 164 (3d Cir. 1998) (No. 96-5457), 1996 WL 33453512, at
    *24 ..................................................................................................... 18

Brief for Cross-Appellees and Reply Brief for Appellants, *Gutierrez v. Ashcroft*,
    125 F. App'x. 406 (3d Cir. 2005) (Nos. 03-4798, 04-1031), 2004
    WL 4184747, at *16............................................................................19

Brief for Defendant-Appellee Robert S. Mueller, *Arar v. Ashcroft*,
    532 F.3d 157 (2d Cir. 2008) (No. 06-4216-CV), 2007 WL 7285642
    at *32....................................................................................................19

Brief for Respondent, *Wigglesworth v. I.N.S.*,
    319 F.3d 951 (7th Cir. 2003) (No. 02-1209), 2002 WL 32170294, at
    *19-*21 ................................................................................................ 18

Brief for the Respondents in Opposition, *Castro v. Dep't of Homeland Sec.*,
    137 S. Ct. 1581 (2017) (No. 16-812), 2017 WL 1046315 .....................17

Brief for the United States as Appellee, *United States v. Torres*,
    No. 15-10492 (9th Cir. July 15, 2016), 2016 WL 3878372, at *22...................... 20

Brief for the United States, *Hernandez v. Mesa*,
    137 S. Ct. 2003 (2017) (No. 15-118), 2017 WL 104588 at *35............................17

Brief for the United States, *United States v. Portillo-Munoz*,
    643 F.3d 437 (5th Cir. 2011) (No. 11-10086), 2011 WL 2115676, at
    *7 ......................................................................................................... 20

Brief of Plaintiff/Appellee, *United States v. Rangel-Hernandez*,
    597 F. App'x 553 (10th Cir. 2015) (No. 14-7056), 2015 WL 222869,
    at *8-*17 ............................................................................................... 20

Federal Defendants' Memorandum in Opposition to Plaintiffs'
    Motion for TRO at 13, *Pineda-Cruz v. Thompson*,
    No. 5:15-cv-00326 (W.D. Tex. May 7, 2015) (Dkt. 22)........................... 10-11, 19

Reply Brief for Appellant United States at 9, *United States v. Ospina*,
    317 F. App'x 684 (9th Cir. 2009) (No. 08-50461), 2008 WL
    6822006 ........................................................................................... 20

Reply in Support of Appellants' Brief, *Flores v. Sessions*,
    862 F.3d 863 (9th Cir. 2017) (No. 17-55208), 2017 WL 1055525, at
    *13 n.6 ........................................................................................... 18

Transcript of Oral Argument at 17, *Jennings v. Rodriguez*,
    No. 15-1204 (U.S. October 3, 2017) ................................................. 18

## Interest of Amici Curiae

Amici curiae are the States of Texas, Arkansas, Louisiana, Michigan, Missouri, Nebraska, Ohio, Oklahoma, South Carolina, West Virginia, and the Commonwealth of Kentucky, by and through Governor Matthew G. Bevin.[1] The States have an interest in cooperating with the federal government to establish a consistent and correct understanding of the rights of aliens unlawfully present in the United States, as the States "bear[] many of the consequences of unlawful immigration." *Arizona v. United States*, 567 U.S. 387, 397 (2012). The States also have "a legitimate and substantial interest in preserving and promoting fetal life," as well as an "interest in promoting respect for human life at all stages in the pregnancy." *Gonzales v. Carhart*, 550 U.S. 124, 145, 163 (2007).

In this case, the district court has entered an order declaring that the U.S. Constitution confers on unlawfully-present aliens the right to an elective abortion that is not medically necessary—even when they have virtually no ties to this country. Until this litigation, no court had ever before recognized such broad rights for unlawfully-present aliens with virtually no connections to the country. If this Court affirms the decision below, there will be no meaningful limit on the constitutional rights an unlawfully-present alien can invoke simply

---

[1] Neither amici nor counsel received any monetary contributions intended to fund preparing or submitting this brief. No party's counsel authored this brief in whole or in part.

by attempting to enter this country illegally. Such relief would also contradict the Supreme Court's longstanding precedent that full Fifth Amendment rights accorded to citizens can only be extended to those aliens who "have come within the territory of the United States and *developed substantial connections with this country.*" *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (emphasis added).

Amici thus urge the Court to reverse the decision below and vacate the preliminary injunction.

## Introduction

The Constitution does not confer the right to an elective abortion on unlawfully-present aliens with virtually no ties to the country. Under long-settled doctrine, the constitutional rights an alien may invoke depend on the scope of the alien's ties to this country. It is true that all persons—regardless of immigration status, and regardless of their ties here—have certain cabined constitutional rights, including baseline procedural protections and the right to be free from gross physical abuse. But that does not mean that such unlawfully-present aliens are accorded the panoply of affirmative liberty rights that citizens and lawfully-present aliens possess.

The district court below disregarded all of that. It held, in a single footnote, that "Plaintiffs' Fifth Amendment right to decide whether to continue or terminate their pregnancies is not diminished by their status" as unlawfully-present aliens with no substantial ties to this country. *Garza v. Hargan*, No. 17-CV-02122, 2018 WL 1567600, at *10 & n.5 (D.D.C. Mar. 30, 2018). That holding contradicts long-settled and binding Supreme Court precedent providing that an alien's degree of connections to this country determines the degree of Fifth Amendment rights accorded to her. The district court's preliminary injunction thus rests on an incorrect understanding of the law. This Court should reverse the decision below and vacate the preliminary injunction.

# ARGUMENT

## I. Unlawfully-Present Aliens with Virtually No Connections to the United States Have No Constitutional Right To An Elective Abortion.

The right Plaintiffs assert does not exist: Unlawfully-present aliens with virtually no connections to the country do not have a constitutional right to an elective abortion. Plaintiffs thus are not entitled to a preliminary injunction directing the federal government to facilitate Plaintiffs' exercise of a right they cannot assert. *See Winter v. NRDC*, 555 U.S. 7, 20 (2008) (preliminary injunctive relief unavailable if the plaintiff cannot establish a likelihood of success on the merits); *Mazurek v. Armstrong*, 520 U.S. 968, 970 (1997) (per curiam) (same).

### A. The Court Should Apply the Supreme Court's Long-Settled "Substantial Connections" Test, Which Provides That the Degree of Connections to This Country Determines the Degree of Fifth Amendment Rights Accorded to Aliens.

The "initial inquiry" in assessing any due process claim is whether the Constitution protects the right the plaintiff asserts. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215, 223-24 (1976). Only after confirming that the right at issue exists should a court move on to whether the government has violated that right. *See id.* This Court should thus begin its analysis by asking whether the right to an elective abortion recognized by the Supreme Court applies to unlawfully-present aliens with virtually no connections to this country who were apprehended while attempting to cross the border illegally.

4

The answer to that question is "plainly—and easily—no." *Garza v. Hargan*, 874 F.3d 735, 743 (D.C. Cir. 2017) (en banc) (per curiam) (Henderson, J., dissenting), *vacated*, *Azar v. Garza*, 138 S. Ct. 1790, 1793 (2018).

### 1. The Constitutional Rights of Aliens are Determined by a Sliding Scale Based on the Degree of Connections the Alien Has to the Country.

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." The Supreme Court has held that unlawfully-present aliens are "persons" protected by the Fifth Amendment. *Plyler v. Doe*, 457 U.S. 202, 210 (1982). The Court reiterated in 2001 that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).[2]

But simply because an alien is a "person" covered by the Fifth Amendment, it does not follow that the alien is necessarily "due" the same scope of rights accorded to citizens or lawfully-present aliens. The Supreme Court has held that the rights an alien is "due" depend on the connections that person has established with this country: *United States v. Verdugo-Urquidez*, 494 U.S. 259, 270 (1990), applied existing Supreme Court precedent and clarified that

---

[2] Throughout the various iterations of this case, amici have never argued that unlawfully-present aliens are not "persons" under the Fifth Amendment.

*Plyler*'s Fifth Amendment analysis "establish[es] only that aliens receive constitutional protections when they have come within the territory of the United States *and developed substantial connections with this country*." *Id.* at 271 (emphasis added).

*Verdugo-Urquidez* emerged from the Supreme Court's bedrock rule that an alien is "accorded a generous and ascending *scale of rights* as he increases his identity with our society." *Johnson v. Eisentrager*, 339 U.S. 763, 770 (1950) (emphasis added). In other words, as set out in *Eisentrager* and explained by *Verdugo-Urquidez*, an alien's connections determine the scope of rights the alien is due. *See id.* As a person develops increasing connections with this country, the person's constitutional protections expand. *E.g., Verdugo-Urquidez*, 494 U.S. at 268-69; *see also Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (per curiam) (staying injunction of immigration order for aliens "who lack any bona fide relationship with a person or entity in the United States"). Initial lawful entry affords "safe conduct" and confers "certain rights," which "become more extensive and secure when he makes preliminary declaration of intention to become a citizen, and they expand to those of full citizenship upon naturalization." *Eistentrager*, 339 U.S. at 770; *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) (alien's "constitutional status changes" only after he "gains admission to our country and begins to develop the ties that go with permanent residence").

No decision of the Supreme Court has abrogated that basic *Eisentrager/Verdugo-Urquidez* framework of a sliding scale of rights based on the

6

degree of connections the alien has to the country. In particular, *Zadvydas* did not alter or undermine *Verdugo-Urquidez*'s pronouncement that to invoke the full scope of Fifth Amendment rights, an unlawfully-present alien must demonstrate "substantial connections." *See, e.g., Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 997 (9th Cir. 2012) (applying "significant voluntary connection" test from *Verdugo-Urquidez*); *United States v. Meza-Rodriguez*, 798 F.3d 664, 670 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1655 (2016) (same). In fact, *Zadvydas* expressly limited its analysis to "aliens *who were admitted* to the United States but subsequently ordered removed." 533 U.S. at 682 (emphasis added). By contrast, "[a]liens who have not yet gained initial admission to this country would present a very different question." *Id*.

> **2.   Unlawfully-Present Aliens With Virtually No Connections to the Country Lack the Panoply of Affirmative Liberty Rights that Citizens and Lawfully-Present Aliens Possess, Although They Do Have Baseline Procedural Protections and the Right to be Free from Gross Physical Abuse.**

a.  The sliding-scale approach set out in *Eisentrager* and *Verdugo-Urquidez* recognizes that it is the rare exception where constitutional rights are accorded to unlawfully-present aliens with minimal connections to the country. Under that rare exception, the mere fact of presence in this country—even unlawful presence—does confer certain baseline constitutional rights against egregious harm, but not affirmative liberty rights. And even when certain limited constitutional rights are extended to unlawfully-present aliens, courts routinely hold

that the full scope of a constitutional provision's rights do not extend to such aliens.

For example, mere unlawful presence confers a basic right against "gross physical abuse" in this country. *Castro v. Cabrera*, 742 F.3d 595, 600 (5th Cir. 2014) (citing *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987)). The Constitution protects everyone on U.S. soil, even unlawfully-present aliens with no other ties to this country, against the "wanton or malicious infliction of pain" by governmental officials. *Id.*[3]

Under the "ascending scale" of rights articulated in *Eisentrager* (339 U.S. at 770), reinforced in *Landon* (459 U.S. at 32), restated in *Verdugo-Urquidez* (494 U.S. at 268-69)—and applied in *Lynch* (810 F.2d at 1370) and *Castro* (742 F. 3d at 600)—all persons on U.S. soil are constitutionally protected against "gross physical abuse." *Castro*, 742 F.3d at 600. However, even though the Constitution confers basic protection against gross physical abuse, full Fourth

---

[3] In a previous appeal in this case, the en banc Court "substantially" adopted a panel dissent arguing that amici's position would mean that the aliens and "everyone else here without lawful documentation—including everyone under supervision pending immigration proceedings and all Dreamers—have no constitutional right to bodily integrity in any form (absent criminal conviction)." *See Garza*, 874 F.3d at 736 (substantially adopting panel dissent). But that does not follow from amici's position, and the Supreme Court's precedents do not lead to that drastic outcome. The "deeply troubling" hypotheticals the panel dissent posited are thus fully resolved by a proper application of the *Eisentrager / Verdugo-Urquidez* framework.

Amendment rights accorded to citizens do not apply to unlawfully-present aliens with only minimal connections to the country. *See, e.g.*, *Castro*, 742 F.3d at 599-600 (Fourth Amendment does not extend to unlawfully-present aliens who remain in the United States illegally, unless they are raising claims of "gross physical abuse"); *United States v. Vilches-Navarrete*, 523 F.3d 1, 13 (1st Cir. 2008) (criminal defendant lacked "substantial connection" with U.S. necessary to invoke Fourth Amendment protection under *Verdugo-Urquidez*).

In addition to the gross-physical-abuse prohibition, the mere fact of presence in this country—even unlawful presence—also confers a certain set of basic procedural guarantees before the federal government can deport the individual. *See, e.g.*, *Demore v. Kim*, 538 U.S. 510, 523 (2003) (it is "well established" that aliens have due-process rights in deportation hearings). But even then, the full scope of procedural due process rights guaranteed to citizens does not extend to unlawfully-present aliens. *See, e.g.*, *id*. at 521 ("'In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens.'" (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976))); *accord, e.g.*, *Zadvydas*, 533 U.S. at 718 (Kennedy, J., dissenting) ("The liberty rights of the aliens before us here are subject to limitations and conditions not applicable to citizens, however." (citing *Mathews*, 426 U.S. at 79-80)).

In sum, the fact that basic procedural safeguards and protections against "gross physical abuse" are afforded to everyone on U.S. soil does not mean that the full panoply of constitutional rights accorded to citizens extends to

each unlawfully-present alien with only minimal connections to the country. *See Verdugo-Urquidez*, 494 U.S. at 268-69.

b. Furthermore, courts routinely hold that unlawfully-present aliens with minimal connections to the country lack affirmative liberty rights. For example, numerous courts have held that unlawfully-present aliens with minimal connections to the country do not have the Second Amendment "fundamental right" (*McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010)) to keep and bear arms. *United States v. Portillo–Munoz*, 643 F.3d 437, 442 (5th Cir. 2011) *as revised* (June 29, 2011); *United States v. Carpio–Leon*, 701 F.3d 974, 979 (4th Cir. 2012); *United States v. Flores*, 663 F.3d 1022, 1023 (8th Cir. 2011) (per curiam); *cf. Meza-Rodriguez*, 798 F.3d at 669-672 (unlawfully-present alien had Second Amendment rights only because he arrived in the U.S. at a young age and lived here for 20 years).

And full First Amendment rights do not extend to unlawfully-present aliens without substantial connections to the country. *See, e.g.*, *Citizens United v. FEC*, 558 U.S. 310, 362 (2010) (noting federal statute, now codified at 52 U.S.C. §30121, prohibiting "foreign national[s]" from making direct contributions or independent expenditures for political speech); *Kleindienst v. Mandel*, 408 U.S. 753, 769-70 (1972) (alien may be returned to home country for engaging in disfavored political speech in this country); *Galvan v. Press*, 347 U.S. 522, 531 (1954) (government may restrict alien's freedom of association).

The Department of Justice has explicitly advanced this view in previous litigation. *See* Federal Defendants' Memorandum in Opposition to Plaintiffs'

Motion for TRO at 13, *Pineda-Cruz v. Thompson*, No. 5:15-cv-00326 (W.D. Tex. May 7, 2015) (Dkt. 22) ("Because Plaintiffs never gained entry into the United States and have not developed substantial connections with this country, they are not within the scope of individuals contemplated by the Supreme Court as being able to raise claims under the First Amendment."). In fact, the federal government has, on dozens of occasions, argued that unlawfully-present aliens lack the full scope of constitutional rights afforded to citizens. *See, e.g.*, *infra* Part II.B.2.

These principles establishing that unlawfully-present aliens lack affirmative liberty rights held by citizens comport with the Supreme Court's declaration that aliens subject to deportation may be detained as their deportation is processed. *See, e.g.*, *Kim*, 538 U.S. at 523 ("At the same time, however, [the Supreme Court] has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process."). With physical detention necessarily comes a restriction of liberties.

c. The affirmative substantive due process right recognized by the Supreme Court to seek the medical procedure of an elective abortion is much more analogous to the affirmative liberty rights courts have repeatedly held are not accorded to unlawfully-present aliens who lack substantial connections to the country. In contrast, baseline procedural safeguards and the basic protection against gross physical abuse are negative prohibitions on drastic government conduct (detention and removal without any process, and gross physical abuse).

11

The district court did not cite any authority to the contrary. It held, in a single footnote, that "Plaintiffs' Fifth Amendment right to decide whether to continue or terminate their pregnancies is not diminished by their status" as unlawfully-present aliens with no substantial ties to this country. *Garza*, 2018 WL 1567600, at *10 & n.5. It cited *Zadvydas* as support. *Id*. But as set out above, *Zadvydas* did not alter or undermine *Verdugo-Urquidez*'s pronouncement that to invoke the full scope of Fifth Amendment rights, an unlawfully-present alien must demonstrate "substantial connections." Indeed, *Zadvydas* expressly limited its analysis to "aliens *who were admitted* to the United States but subsequently ordered removed." 533 U.S. at 682 (emphasis added). By contrast, "[a]liens who have not yet gained initial admission to this country would present a very different question." *Id*.

The district court also cited *Jean v. Nelson*, 472 U.S. 846, 875 (1985) for the proposition that "the Due Process Clause applies to all 'persons' within the territorial jurisdiction of the United States, no matter their immigration status." 2018 WL 1567600, at *10 & n.5. But the *Jean* Court explicitly distinguished between a "resident alien" and "an alien entrant," noting that the former enjoys rights the latter does not. 472 U.S. at 871. *Jean* merely confirms amici's view that unlawfully-present aliens with no substantial ties to this country do not enjoy the same scope of rights as lawful resident aliens. *See id*.

In short, the district court cited only two authorities in support of its sweeping holding, but neither of those authorities supports the district court's

12

view. Indeed, both *Zadvydas* and *Jean* confirm that the district court's preliminary injunction rests on an incorrect view of the law.

Likewise, Plaintiffs have failed to produce any authority supporting their radical view that unlawfully-present aliens have the same scope of affirmative liberty rights as U.S. citizens. In the district court, Plaintiffs relied largely on *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 871 (1992) (plurality op.), for the proposition that the government may not place a substantial obstacle in the path of women seeking abortion. But neither *Casey* nor any of its progeny says or implies that the substantive due process right to abortion recognized by the Supreme Court extends to unlawfully-present aliens—especially not those who have no ties to this country.

Previously in this litigation, Plaintiffs further offered a string citation of cases, but none of those cases support the proposition that unlawfully-present aliens have the right to an elective abortion. *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 187 (D.D.C. 2015), for example, concerned whether the government could continue to detain asylum applicants after those individuals had demonstrated a credible fear of persecution. Each of the applicants had family members in the United States who had agreed to provide shelter and support for the asylum-seekers. On those facts, and in light of the plaintiffs' threshold showing of asylum eligibility, the court held that they could invoke the protection of the Due Process Clause. Here, the operative complaint says nothing about asylum, alleges no substantial connection to the U.S. at all, and offers no basis to believe that the aliens are on track to permanent residence.

13

The other authorities Plaintiffs have previously offered fare no better. Plaintiffs claimed the alleged abortion right was derived from *Plyler*, 457 U.S. at 210. But as explained above, the Supreme Court explicitly clarified and supplanted *Plyler* in *Verdugo-Urquidez*, 494 U.S. at 270-71. So too with *Mathews*, 426 U.S. at 77, which concerned resident aliens who were lawfully admitted to the United States; plus, *Mathews* too was clarified and supplanted by *Verdugo-Urquidez*. And *Kwai Fun Wong v. United States*, 373 F.3d 952, 971 (9th Cir. 2004), concerned an alien who had been lawfully present in the U.S. for almost two decades—in other words, someone who had established "substantial connections" under *Verdugo-Urquidez*.

In short, at no stage in this litigation have Plaintiffs ever presented any authority that supports the extraordinary constitutional holding they ask this Court to make.

### B. The Operative Complaint Confirms that the Aliens At Issue Here Have No "Substantial Connections" to This Country, and Therefore Have No Right to an Elective Abortion.

Plaintiffs' Second Amended Complaint (Dkt. 104), which the district court treated as operative (2018 WL 1567600, at *9), does not contain any allegations establishing any substantial connections between any Plaintiff and the United States. Plaintiffs Roe and Moe were detained upon their arrival in this country. Dkt. 104 ¶¶ 20, 27. All of the Plaintiffs admit that they "have no

legal immigration status," and thus are present in this country unlawfully. *Id*. ¶ 35.[4]

Those undisputed facts resolve this case. Under *Verdugo-Urquidez*, the Plaintiffs must show "substantial connections" to assert full Fifth Amendment affirmative liberty rights. 494 U.S. at 271. They have not done so; in fact, they have confirmed that they have no such connections. *See* Dkt. 104. They thus stand at the start of the "ascending scale of rights" that individuals climb as they "increase[] [their] identity with our society." *Eisentrager*, 339 U.S. at 770. At that level, the Constitution protects them against "gross physical abuse" in this country. *Castro*, 742 F. 3d at 600. The Constitution further confers some basic procedural guarantees related to their deportation proceedings. *Kim*, 538 U.S. at 523. But as *Verdugo-Urquidez*, *Eisentrager*, and *Kim* confirm, the Constitution does not accord them the affirmative liberty right to an abortion that is not medically necessary.

## II. This Court Should Apply the "Substantial Connections" Test in Reviewing the Decision Below.

The parties' briefing and the district court's analysis all overlooked the bedrock principles articulated in *Eisentrager* and *Verdugo-Urquidez*, even

---

[4] Plaintiffs have moved to amend the operative complaint and to file a Third Amended Complaint. *See* Dkt. 118. The district court has not ruled on that motion. In any event, the proposed Third Amended Complaint does not remedy the defects of the operative Second Amended Complaint; it does not allege substantial connections between the Plaintiffs and this country. *See* Dkt. 118-1 (proposed Third Amended Complaint).

though those principles confirm that unlawfully-present aliens with virtually no ties to this country have no right to an elective abortion. The Court should apply the correct law.

## A.  The Court Has a Duty to Apply the Correct Law.

As Judge Henderson correctly observed in a previous appeal in this case (*see* 874 F.3d at 745-46), regardless of what the parties have argued, this Court should decide the predicate constitutional question this case presents. *See, e.g.*, *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993) (if a party "fail[s] to identify and brief" "an issue 'antecedent to . . . and ultimately dispositive of' the dispute," the Court may consider the issue sua sponte (citation omitted)). After all, "even an explicit concession on this point would not '"relieve this Court of the performance of the judicial function"' of deciding the issues." *Torres v. Puerto Rico*, 442 U.S. 465, 471 n.3 (1979) (quoting *Sibron v. New York*, 392 U.S. 40, 58 (1968)). Moreover, a government's "concessions cannot be accepted" when they are contrary to law. *Massachusetts v. United States*, 333 U.S. 611, 625 (1948).

In short, regardless of what the parties have argued, the Court has a duty apply the correct legal framework. *See id*.

## B.  The "Substantial Connections" Test Is Widely Cited and Applied As Controlling.

1.  Federal courts uniformly and routinely apply the controlling *Verdugo-Urquidez* test when determining whether aliens can assert constitutional rights. *See, e.g.*, *Meza-Rodriguez*, 798 F.3d at 670; *Ibrahim*, 669 F.3d at 995;

*United States v. Huitron-Guizar*, 678 F.3d 1164, 1168 (10th Cir. 2012); *Portillo-Munoz*, 643 F.3d at 440; *Vilches-Navarrete*, 523 F.3d at 13; *Atamirzayeva v. United States*, 524 F.3d 1320, 1325 (Fed. Cir. 2008); *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 202 (D.C. Cir. 2001). As these citations demonstrate, the arguments amici advance reflect basic principles that have governed the rights of aliens for decades.

2. In conformance with the circuits' widespread adherence to this established Supreme Court precedent, the Department of Justice has relied on *Verdugo-Urquidez*'s substantial-connections test dozens of times to argue that unlawfully-present aliens without sufficient ties to the country lack constitutional rights.

Just months ago, the Department argued in the Supreme Court that:

> [A]n alien arrested shortly after crossing the U.S. border surreptitiously cannot lay the same claim to constitutional protections as aliens who were lawfully admitted or who entered illegally then became, "in a[] real sense, a part of our population[.]"

Brief for the Respondents in Opposition, *Castro v. Dep't of Homeland Sec.*, 137 S. Ct. 1581 (2017) (No. 16-812), 2017 WL 1046315, at *17.

That is not the only time in recent months that the Department made that argument in the Supreme Court. *See, e.g.*, Brief for the United States, *Hernandez v. Mesa*, 137 S. Ct. 2003 (2017) (No. 15-118), 2017 WL 104588 at *35 (arguing that, under *Verdugo-Urquidez*, aliens are "afforded constitutional protections only when 'they ha[d] come within the territory of the United States and developed substantial connections with this country'"); Transcript of

Oral Argument at 17, *Jennings v. Rodriguez*, No. 15-1204 (U.S. October 3, 2017) (Q: "is your argument about the new admits, the people who are coming to the border, premised on the idea that they simply have no constitutional rights at all?" A: "It is premised on that.").[5]

The Department has made similar arguments in the Fifth Amendment context in other courts. *E.g.*, Reply in Support of Appellants' Brief, *Flores v. Sessions*, 862 F.3d 863 (9th Cir. 2017) (No. 17-55208), 2017 WL 1055525, at *13 n.6 ("Aliens identified at the border who have not had any contact with the United States—even if they are subsequently paroled into the territorial United States during the resolution of their applications for admission—are not entitled to any process other than that provided by statute."); Brief for Appellee, *United States v. Kole*, 164 F.3d 164 (3d Cir. 1998) (No. 96-5457), 1996 WL 33453512, at *24 ("the Constitution was 'not intended to extend to aliens in the same degree as to citizens'" (quoting *Verdugo-Urquidez*, 494 U.S. at 273)); Brief for Respondent, *Wigglesworth v. I.N.S.*, 319 F.3d 951 (7th Cir. 2003) (No. 02-1209), 2002 WL 32170294, at *19-*21 ("In order for the due process clause to apply, there must be an identifiable life, liberty or property interest. It is clear that any liberty interest [petitioner] may have in this regard is so weak that she clearly has no right to a hearing before an immigration judge

---

[5] The Department later modified its response to suggest that aliens might have some rights (which is also consistent with amici's position, as explained above), but certainly not the full scope afforded citizens. Tr. at 17-18.

18

. . . [petitioner] is not a permanent resident of the United States or even a temporary resident.").

And the Department has explicitly relied on the *Eisentrager* "ascending scale" analysis to argue against expanded due process rights for unlawfully-present aliens. *E.g.*, Brief for Appellee United States, *United States v. Raya-Vaca*, 771 F.3d 1195 (9th Cir. 2014) (No. 13-50129), 2013 WL 6221846, at \*13–15 ("[T]here has long been a sliding-scale approach to determining the rights to be afforded to aliens by the Due Process Clause. Under that approach, aliens generally enjoy more rights as a function of their legality/longevity in this country. On one end of the scale is the undocumented alien; in the middle is the lawful permanent resident; and at the opposite end is the naturalized citizen. As an alien moves from one end of the scale to the other, his rights increase . . ."); Brief for Defendant-Appellee Robert S. Mueller, *Arar v. Ashcroft*, 532 F.3d 157 (2d Cir. 2008) (No. 06-4216-CV), 2007 WL 7285642 at \*32-33 (similar); Brief for Cross-Appellees and Reply Brief for Appellants, *Gutierrez v. Ashcroft*, 125 F. App'x. 406 (3d Cir. 2005) (Nos. 03-4798, 04-1031), 2004 WL 4184747, at \*16, \*20 (similar).

Even beyond the due-process context, the Department has invoked *Verdugo-Urquidez*'s substantial-connections test to argue against various other constitutional rights for aliens without sufficient ties to the country:

- *First Amendment*. *E.g.*, Federal Defendants' Memorandum in Opposition to Plaintiffs' Motion for TRO at 13, *Pineda-Cruz v. Thompson*, No. 5:15-cv-00326 (W.D. Tex. May 7, 2015) (Dkt. 22) ("Because Plaintiffs never gained entry into the United States and have

19

not developed substantial connections with this country, they are not within the scope of individuals contemplated by the Supreme Court as being able to raise claims under the First Amendment.").

- *Second Amendment. E.g.*, Brief for the United States as Appellee, *United States v. Torres*, No. 15-10492 (9th Cir. July 15, 2016), 2016 WL 3878372, at *22 ("unauthorized aliens do not have a Second Amendment right to bear arms"); Brief and Short Appendix of Plaintiff-Appellee, *United States v. Meza-Rodriguez*, 798 F.3d 664 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1655 (2016) (No. 14-3271), 2015 WL 2064443, at*13-*15 ("[T]he government asserts that the term 'the people' within the Second Amendment properly excludes illegal aliens."); Brief for the United States, *United States v. Portillo-Munoz*, 643 F.3d 437 (5th Cir. 2011) (No. 11-10086), 2011 WL 2115676, at *7 ("illegal immigrants do not possess Second Amendment rights"); Brief of Plaintiff/Appellee, *United States v. Rangel-Hernandez*, 597 F. App'x 553 (10th Cir. 2015) (No. 14-7056), 2015 WL 222869, at *8-*17 (arguing that an unlawfully-present alien has no Second Amendment rights).

- *Fourth Amendment. E.g.*, Appellee's Brief, *Castro v. Cabrera*, 742 F.3d 595 (5th Cir. 2014) (No. 13-40017), 2013 WL 8635071, at *25 ("Plaintiffs who were seeking admission as aliens were not entitled to constitutional protections, because they had not yet 'come within the territory of the United States.'").

- *Sixth Amendment. E.g.*, Reply Brief for Appellant United States at 9, *United States v. Ospina*, 317 F. App'x 684 (9th Cir. 2009) (No. 08-50461), 2008 WL 6822006 (defendant's rights "should have turned on objective factors and practical concerns, such as his citizenship, lack of substantial ties to the United States . . . . In [defendant]'s case, that right must be considered diminished, relative to the speedy trial right of others with more substantial ties to the United States, living within the sovereign or diplomatic reach of the United States.").

20

These authorities confirm that the analyses set out in *Verdugo-Urquidez* and *Eisentrager* not only are axiomatic, but are routinely applied in the exact situation this case presents.

*    *    *

As the Supreme Court has recognized, the States already "bear[] many of the consequences of unlawful immigration." *Arizona*, 567 U.S. at 397. Yet Plaintiffs once again have asked the court below—and now this Court—to announce that anyone on Earth has any number of constitutional rights simply by being apprehended while trying to cross the United States border unlawfully. That holding would only further incentivize even more unlawful immigration and further strain the budgets and resources of governments throughout the Nation.

## Conclusion

For the foregoing reasons, the Court should reverse the decision below and vacate the preliminary injunction.

Respectfully submitted.

Leslie Rutledge
Attorney General of Arkansas

M. Stephen Pitt
General Counsel for Governor
  of Kentucky, Matthew G. Bevin

Jeff Landry
Attorney General of Louisiana

Bill Schuette
Attorney General of Michigan

Josh Hawley
Attorney General of Missouri

Doug Peterson
Attorney General of Nebraska

Michael DeWine
Attorney General of Ohio

Mike Hunter
Attorney General of Oklahoma

Alan Wilson
Attorney General of
  South Carolina

Patrick Morrisey
Attorney General of
  West Virginia

Ken Paxton
Attorney General of Texas

Jeffery C. Mateer
First Assistant Attorney General

Brantley D. Starr
Deputy First Assistant Attorney
General

*/s/ Scott A. Keller*
Scott A. Keller
Solicitor General
Bar No. TX0120
scott.keller@oag.texas.gov

Kyle Hawkins
Assistant Solicitor General

David J. Hacker
Special Counsel for Civil Litigation

Office of the Texas
Attorney General
P.O. Box 12548, Mail Code 009
Austin, Texas 78711-2548
(512) 936-1700

*Attorneys for Amici Curiae*

22

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2018, the foregoing document was served via electronic filing on all counsel of record in this case.

/s/ Scott A. Keller

SCOTT A. KELLER

## CERTIFICATE OF COMPLIANCE

This brief contains 4,689 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii). It thus complies with Rule 29(a)(5). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Scott A. Keller

SCOTT A. KELLER