SCHEDULED FOR ORAL ARGUMENT SEPTEMBER 26, 2018

**18-5093**

# United States Court of Appeals
# for the District of Columbia Circuit

ALEX M. AZAR II, Secretary of Health and Human Services, *et al.*,

*Defendants-Appellants,*

v.

ROCHELLE GARZA, as guardian ad litem to unaccompanied minor JANE DOE, on behalf of herself and others similarly situated, *et al.*,

*Plaintiffs-Appellees.*

On Appeal from the United States District Court
for the District of Columbia
No. 17-cv-02122-TSC

**BRIEF FOR AMICI CURIAE STATES OF NEW YORK, CALIFORNIA, CONNECTICUT, DELAWARE, HAWAI'I, ILLINOIS, IOWA, MAINE, MARYLAND, MASSACHUSETTS, NEW JERSEY, NEW MEXICO, NORTH CAROLINA, OREGON, PENNSYLVANIA, VERMONT, VIRGINIA, WASHINGTON, and the DISTRICT OF COLUMBIA IN SUPPORT OF APPELLEES**

ANISHA S. DASGUPTA
 *Deputy Solicitor General*
ESTER MURDUKHAYEVA
 *Assistant Solicitor General*
  *of Counsel*

BARBARA D. UNDERWOOD
 *Attorney General*
 *State of New York*
28 Liberty Street
New York, NY 10005
(212) 416-6279

*(Counsel listing continues on inside front cover)*    Dated: August 6, 2018

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Cir. Rule 28(a)(1)(A), the undersigned certifies as follows:

(A)     Parties and Amici. To amici's knowledge, all parties, intervenors, and amici appearing in this Court are listed in the Briefs for Appellants and Appellees in this case, No. 18-5093, other than the following amici:

State of Maryland
State of New Jersey
State of New Mexico
State of North Carolina
Commonwealth of Virginia
American College of Obstetricians and Gynecologists
American Medical Association
American Academy of Pediatrics
Medical Society of the District of Columbia
American College of Physicians
Society for Adolescent Health and Medicine
Asylum Access
National Immigration Law Center
Public Counsel
The Legal Aid Society
Washington Office on Latin America
Advocates for Youth
American Association of University Women
Black Women for Wellness
California Latinas for Reproductive Justice
Center for American Progress
Center for Reproductive Rights
Desiree Alliance
Hispanic Federation
Human Rights Watch
Ibis Reproductive Health
If/When/How
In Our Own Voice

Lambda Legal Defense and Education Fund, Inc.
LatinoJustice PRLDEF
Legal Voice
NARAL Pro-Choice America
National Abortion Federation
National Advocates for Pregnant Women
National Asian Pacific American Women's Forum
National Council of Jewish Women
National Institute for Reproductive Health
National Latina Institute for Reproductive Health
National Network of Abortion Funds
National Partnership
National Women's Law Center
New Voices for Reproductive Justice
Oklahoma Coalition for Reproductive Justice
Planned Parenthood Federation of America
Reproductive Justice Clinic at New York University School of Law
SisterReach
SisterSong
Southwest Women's Law Center
Women's Law Project

(B)    Ruling Under Review. To amici's knowledge, references to the ruling at issue appear in the Briefs for Appellants and Appellees in this case, No. 18-5093.

(C)    Related Cases. To amici's knowledge, references to any related cases appear in the Briefs for Appellants and Appellees in this case, No. 18-5093.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................ii

GLOSSARY OF ABBREVIATIONS ........................................................ v

INTERESTS OF AMICI CURIAE ......................................................... 1

STATEMENT OF THE CASE ................................................................ 3

SUMMARY OF ARGUMENT ................................................................. 9

ARGUMENT ...................................................................................... 11

POINT I

ORR'S POLICY VIOLATES FEDERALISM PRINCIPLES AND INFRINGES
ON STATE SOVEREIGNTY ................................................................ 11

    A.   ORR's Policy Infringes on the Sovereignty of States That
         Do Not Require Parental Involvement in Abortion
         Decisions. ............................................................................... 12

    B.   ORR's Policy Infringes on the Sovereignty of States That
         Require Parental Involvement in Abortion Decisions
         Because the Agency Disregards Parental Consent and
         Bypass Determinations............................................................ 18

POINT II

THE ORR DIRECTOR'S DENIAL OF ALL REQUESTS TO ACCESS
ABORTION SERVICES IS AN UNDUE BURDEN ON THE RIGHT TO
CHOOSE TO TERMINATE A PREGNANCY ................................................. 21

CONCLUSION ..................................................................................... 34

i

# TABLE OF AUTHORITIES

**Cases**      **Page(s)**

*Bellotti v. Baird,*
    443 U.S. 622 (1979) .................................................................. 22, 28, 31

*Boggs v. Boggs,*
    520 U.S. 833 (1997) ................................................................................ 1

*Demore v. Kim,*
    538 U.S. 510 (2005) .............................................................................. 25

*Doe v. ORR,*
    884 F.3d 269 (5th Cir. 2018) ......................................................... 20, 21

*Garza v. Hargan,*
    874 F.3d 735 (D.C. Cir. 2017) ..................................................... 6, 24, 27

*Hisquierdo v. Hisquierdo,*
    439 U.S. 572 (1979) .............................................................................. 14

*Hodgson v. Minnesota,*
    497 U.S. 417 (1990) ......................................................................... 22, 23

*Louisiana Pub. Serv. Comm'n v. FCC,*
    476 U.S. 355 (1986) .............................................................................. 14

*Parham v. J.R.,*
    442 U.S. 584 (1979) ......................................................................... 15, 16

*Planned Parenthood of the Blue Ridge v. Camblos,*
    155 F.3d 352 (4th Cir. 1998) ............................................................... 29

*Planned Parenthood of Cent. Mo. v. Danforth,*
    428 U.S. 52 (1976) ................................................................................ 23

*Planned Parenthood of Se. Pa. v. Casey,*
    505 U.S. 833 (1992) ................................................................... 9, 21, 22

*Ridgway v. Ridgway,*
    454 U.S. 46 (1981) ................................................................................ 14

| Cases | Page(s) |
|---|---|

*Troxel v. Granville,*
  530 U.S. 57 (2000) ................................................................... 16

*United States v. Lopez,*
  514 U.S. 549 (1995) .................................................................. 15

*Whole Woman's Health v. Hellerstedt,*
  136 S. Ct. 2292 (2016) ......................................................... 9, 22

**Federal Statutes**

6 U.S.C. § 279(b)(1)(B) ................................................................ 14

8 U.S.C.
  § 1229c ................................................................................... 26
  § 1232 ............................................................................. 3, 26

**State Statutes**

Colo. Rev. Stat. § 12-37.5-107 .......................................... 28-29, 30

Fla. Code § 390.01114 ......................................................... 28-29, 30

Md. Code Ann., Health-Gen § 20-103 ....................................... 29

Mo. Rev. Stat. § 188.028 ............................................................ 30

Tex. Fam. Code § 33.003 ............................................................ 30

**Federal Regulations**

8 C.F.R. § 1240.26 ...................................................................... 26

| Rules | Page(s) |
|---|---|

Texas Rules
  1.4 ................................................................................ 28, 29
  2.3 ........................................................................................ 30
  2.5 ........................................................................................ 30
  3.3 ........................................................................................ 30

## Miscellaneous Authorities                    Page(s)

Amnesty International, *Invisible Victims: Migrants on the Move in Mexico* 15 (Apr. 2010), *available at* https://fusiondotnet.files.wordpress.com/2014/09/amr410142010 eng.pdf ................................................................................................ 32

Congressional Research Service, *Unaccompanied Alien Children: An Overview* (Jan. 18, 2017), *available at* https://fas.org/sgp/crs/homesec/R43599.pdf ........................................ 26

Guttmacher Institute, An Overview of Minors' Consent Law as of October 1, 2017, *at* https://www.guttmacher.org/state-policy/explore/overview-minors-consent-law ...................................... 13

Michael Grabell & Topher Sanders, *Immigrant Youth Shelters: "If You're a Predator, It's a Gold Mine*, ProPublica (July 27, 2018), https://www.propublica.org/article/immigrant-youth-shelters-sexual-abuse-fights-missing-children ................................................. 32

Planned Parenthood, *Parental Consent and Notification Laws* (updated June 2018), https://www.plannedparenthood.org/ learn/teens/preventing-pregnancy-stds/parental-consent-and-notification-laws ................................................................. 12-13, 18

# GLOSSARY OF ABBREVIATIONS

GA   Government's Appendix
      Appellants' Corrected Appendix, Doc. No. 1743046

PA   Plaintiffs' Appendix
      Appellees' Appendix, Doc. No. 1743064

ORR Office of Refugee Resettlement

## INTERESTS OF AMICI CURIAE

Amici States of New York, California, Connecticut, Delaware, Hawai'i, Illinois, Iowa, Maine, Maryland, Massachusetts, New Jersey, New Mexico, North Carolina, Oregon, Pennsylvania, Vermont, Virginia, Washington, and the District of Columbia, file this brief in support of plaintiffs-appellees. Amici States have a strong interest in ensuring compliance with the laws that they have enacted to protect the interests of a minor who seeks to obtain an abortion without the involvement of her parents or legal guardians. Although amici have reached different conclusions regarding how best to balance the State's interest in the health and welfare of minors with the State's duty to maintain access to abortion services for those minors, amici share an interest in ensuring that their considered judgments in this area receive the respect that the United States Constitution demands.

It is well established that policy determinations regarding family law, including determinations about the health and welfare of minors, are reserved to the States. *See Boggs v. Boggs*, 520 U.S. 833, 848 (1997). Here, each State has determined when and how a minor can exercise her constitutional right to obtain an abortion without the involvement of her

parents or legal guardians. Some States have determined that a minor may always decide to terminate a pregnancy without notifying her parents. Other States have found that parental involvement is generally appropriate, but allow a state court or physician to evaluate an individual minor's personal circumstances to determine whether she can make the decision independently. Such state-law regimes are a quintessential exercise of the States' historic powers.

The federal Office of Refugee Resettlement (ORR) claims unbounded and unprecedented authority to displace the States' considered approaches with its own *de novo* review. According to ORR, its director may unilaterally override the constitutionally protected reproductive decision of any unaccompanied immigrant minor in its custody, even where that minor has fully complied with all applicable state-law requirements. In exercising this purported authority, ORR has blocked minors from attending medical appointments, inhibited access to state courts, instructed shelters to violate state confidentiality laws, and disregarded state-court determinations. In other words, ORR has prohibited minors from exercising the choice to terminate a pregnancy that the federal Constitution and state law permit those minors to make.

Amici include States that allow minors to make the decision to obtain an abortion without parental involvement, as well States that require parental consent or notification and offer judicial or physician bypass procedures. Permitting a federal agency to unilaterally substitute its policy judgment for the determinations of state legislatures and courts—as well as for the independent decision-making of the minors living in those States—tramples on both the federalism interests of amici States and individual constitutional rights.[1]

## STATEMENT OF THE CASE

The Office for Refugee Resettlement, an office within the United States Department of Health and Human Services, is entrusted with the "care and custody of all unaccompanied alien children, including responsibility for their detention, where appropriate." 8 U.S.C. § 1232(b)(1). In most cases, ORR houses unaccompanied minors in short-term facilities or shelters pending release to a parent or sponsor who lives

---

[1] This brief focuses on why ORR's policy is invalid and should be enjoined. Amici agree that class certification was appropriate for the reasons set forth by the district court (Gov't App. (GA) 245-258) and in appellees' brief (Br. for Appellees at 20-36).

in the United States. (Gov't App. (GA) 239; Plaintiffs' App. (PA) 1-8.) ORR is required to provide all minors in its custody with appropriate routine medical care, including family planning services and emergency health care services. *See* Settlement Agreement, *Flores v. Reno*, No. 85-cv-4544 (C.D. Cal. Jan. 17, 1997).

In March 2017, ORR adopted a policy that authorizes defendant Scott Lloyd, the agency's director, to personally review and decide all requests for medical abortions made by unaccompanied immigrant minors who are in United States custody and are residing in a federally funded shelter. (ECF Docket (Dkt.) 5-4; Dkt. 5-5.) The director, in turn, has prohibited shelters from taking an unaccompanied immigrant minor to a doctor who will provide abortion services, allowing such minors to consult only with doctors who will provide "pregnancy services and life-affirming options counseling." (Dkt. 5-6, at 2.) The director has also barred shelters from allowing an unaccompanied immigrant minor to initiate or participate in a judicial bypass proceeding if she resides in a State that requires parental consent or notification prior to obtaining an abortion. (Dkt. 5-5, at 5; Dkt. 56-6.)

ORR's director has further instructed shelters to inform a minor's parents and other family members about her pregnancy and reproductive decisions without the minor's consent, even where such conduct violates state law. (Dkt. 5-11; Dkt. 5-12.) At the same time, ORR's policy allows the director to deny an abortion request even when a minor notifies her parents and obtains their consent to an abortion. (Dkt. 121-17.) The director's policy of barring access to abortion services and state courts applies nationwide to all unaccompanied immigrant minors who are in the custody of the United States government, including minors who reside in an ORR facility or shelter located in the amici States.

In September 2017, Jane Doe (J.D.), a pregnant seventeen-year-old unaccompanied minor residing in a Texas shelter decided to terminate her pregnancy. Texas requires minors seeking an abortion to notify their parents and receive their consent. After J.D. obtained counsel, ORR permitted her to file a judicial bypass petition in Texas state court. (Dkt. 5-3, at 1.) The Texas state court determined that J.D. was sufficiently mature to make the decision to terminate her pregnancy and granted the judicial bypass. (Dkt. 30, at 1.) Notwithstanding J.D.'s firm wishes and the Texas state court's determination, ORR's director

5

concluded that an abortion was not in J.D.'s best interests and barred her from obtaining an abortion. (Dkt. 30, at 2.)

In October 2017, J.D. filed a putative class action challenging ORR's policy and sought a temporary restraining order enjoining ORR from blocking her access to an abortion. The United States District Court for the District of Columbia (Chutkan, J.) issued the temporary restraining order, based on J.D.'s showing of irreparable injury absent an injunction, the balance of the equities, and likely success on the merits of her claims. (GA 47-48.) This Court, sitting *en banc*, reversed a panel decision to grant ORR's request for a stay pending appeal and reinstated the temporary restraining order. *Garza v. Hargan*, 874 F.3d 735 (D.C. Cir. 2017) (en banc), *vacated as moot*, 138 S. Ct. 1790 (2018) (per curiam).

ORR nevertheless continued to enforce its policy. In December 2017, Jane Roe (J.R.) and Jane Poe (J.P.) sought and received a temporary restraining order enjoining ORR from blocking their access to abortion services. (Dkt. 73.) Unlike J.D., J.R. and J.P. resided in States that permit minors to make the decision to terminate their pregnancies without parental consent or notification. ORR's director nevertheless concluded that an abortion was not in J.R. or J.P.'s best interests and

refused to allow them to end their pregnancies. In the case of J.P., the director determined that an abortion was not in her best interests even though she became pregnant as the result of rape in her home country.[2] (PA 16-23.) ORR did not appeal from the district court's order with respect to J.P., and withdrew its appeal as to J.R. after she was transferred to adult immigration custody and released on her own recognizance. (PA 130.)

In January 2018, Jane Moe (J.M.), another pregnant seventeen-year old in ORR custody, also sought a temporary restraining order enjoining ORR from blocking her access to abortion services. (GA 150-158.) Like J.R. and J.P., J.M. resides in a State that does not require parental consent or notification. Although J.M. insisted that she wished to terminate her pregnancy, ORR's director determined that an abortion was not in her best interests. (GA 162.) While J.M.'s motion for a

---

[2] Although the United States previously represented to this Court that the ORR director's policy had a sexual abuse and medical necessity exception (D.C. Cir. Oral Argument at 20:14-20:29, 22:00-22:30 (Oct. 20, 2017), No. 17-5236), the record shows that the director denied J.P.'s request on the ground that an abortion would be "an additional trauma on top of the trauma she experience[d] as the result of her sexual assault."(Plaintiffs' App. (PA) 22.)

7

temporary restraining order was pending, ORR completed the process of releasing her from federal custody to the custody of a sponsor. (GA 165-167.)

In March 2018, the district court granted the plaintiffs' motions for class certification and class-wide injunctive relief. (GA 238-265, 274-275.) The court held that ORR's policy amounts to an unconstitutional "absolute veto over the reproductive decision of any young woman in [the agency's] custody, a veto that is exercised routinely to bar [unaccompanied minors] from obtaining abortions, despite the fact that no public funds are expended to procure the procedures and notwithstanding the [minor's] own wishes or intentions." (GA 260-261.) The court rejected ORR's argument that simply permitting an unaccompanied minor to access abortion services constitutes government facilitation. (GA 262-263.) Finally, the court found that the hypothetical availability of release to a sponsor and the possibility of voluntary departure did not cure the undue burden created by ORR's policy. (GA 263-264.) This Court largely denied a stay of the order pending appeal. (PA 133-135.)

## SUMMARY OF ARGUMENT

Under controlling Supreme Court precedent, a statute or regulation imposes an unconstitutional undue burden if its purpose or effect is to "plac[e] a substantial obstacle in the path of a woman seeking an abortion." *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 877 (1992) (plurality op.); *accord Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2309 (2016). ORR acknowledges that these principles apply to unaccompanied immigrant minors in United States custody.[3] Nevertheless, ORR mistakenly insists that it can require those minors to obtain the consent of a federal agency director prior to receiving abortion services, and then lawfully withhold consent to all requests for abortion services.

---

[3] The government has previously conceded to this Court that, at least for purposes of this litigation, unaccompanied immigrant minors residing in the United States have constitutional due process rights, including the right to access abortion services. *See* D.C. Cir. Oral Arg. at 17:35-18:50 (Oct. 20, 2017). Although Texas and other state amici (Texas Amici) contend that unaccompanied immigrant minors lack the constitutional right to an abortion unless they have developed "substantial connections" to the United States, the federal government has not pursued this argument at any stage of the litigation. *See* Br. for State of Texas et al. at 4-14. Amici disagree with the argument raised by the Texas Amici for the reasons set forth by the district court. (GA 260 at n.5.)

ORR's unilateral imposition of a consent requirement that does not exist under state law infringes upon the sovereignty of States that have decided to let minors of childbearing age choose for themselves whether to continue or terminate a pregnancy.  And ORR's attempt to be the final authority on whether minors in its custody may obtain an abortion infringes on the sovereignty of States that leave abortion decisions to a minor and her parents unless a state court or a medical professional has determined that the minor is mature enough to make an independent decision to obtain an abortion or that the procedure would be in her best interests.

The ORR director's policy of withholding consent to all requests for abortions also imposes an undue burden on the constitutional rights of unaccompanied immigrant minors. The policy is tantamount to a federal agency veto on a minor's decision to exercise her constitutional right to an abortion. Long-standing Supreme Court case law expressly forbids any third party from holding or exercising an absolute veto power over a minor's decision to terminate her pregnancy. There is no merit to ORR's argument that such a policy is not an undue burden because of the availability of the sponsorship process or a voluntary departure. Neither

sponsorship nor voluntary departure are available to every unaccompanied immigrant minor, and even where available, the processes can take months to complete. The government may not bar access to abortion by pointing to the hypothetical availability of uncertain alternatives that would nevertheless compel children—including those made pregnant as a result of rape—to remain pregnant against their will.

## ARGUMENT

## POINT I

### ORR's Policy Violates Federalism Principles and Infringes on State Sovereignty

ORR asserts the authority to function as the final voice on whether unaccompanied immigrant minors in its custody can obtain an abortion, suggesting that its custodial role entitles it to "consult with the child's parents" as it sees fit and to "make any [relevant] judgment with respect to the child's maturity or her prospects to leave government custody." Br. for Appellants (ORR Br.) at 1. ORR overlooks the fact that the States in which these minors are being housed have already enacted laws or adopted policies determining when and how a minor can choose to terminate a pregnancy. Some States have determined that minors may

access abortion services without parental notification or consent. Other States have concluded that some level of parental involvement is generally appropriate and offer a bypass procedure through which a state court or medical professional can evaluate a minor's maturity and personal circumstances to determine whether she may obtain the abortion without parental notice or consent. Congress has given no indication that it intended to authorize ORR to displace the States' family law regimes with *de novo* federal agency review.  And if there were such legislation, it would not likely pass constitutional muster.

## A.    ORR's Policy Infringes on the Sovereignty of States That Do Not Require Parental Involvement in Abortion Decisions.

Approximately a dozen States, including amici New York, California, Connecticut, Hawai'i, Maine, New Jersey, New Mexico, Oregon, Vermont, and Washington, and the District of Columbia do not currently require minors to notify their parents or to obtain parental consent prior to receiving abortion services. *See* Planned Parenthood,

*Parental Consent and Notification Laws* (updated June 2018).[4] These States have concluded that minors should be able to access a broad range of confidential family planning services and reproductive care, including abortion services, without parental intervention. These States have further concluded that minors of childbearing age are sufficiently mature to make the decision to terminate a pregnancy following consultation with a doctor. Thus, these States do not require parental consent or notification or additional proceedings to ratify the minor's decision.

The ORR policy that plaintiffs challenge provides that no unaccompanied minor in ORR custody may obtain an abortion without the approval of ORR's director, even if that minor is being housed in a State that does not otherwise require parental consent or notification. Yet ORR cannot on its own initiative supplant the specific determinations that different States have made in matters involving the health and welfare of children.

---

[4]    https://www.plannedparenthood.org/learn/teens/preventing-pregnancy-stds/parental-consent-and-notification-laws.
S*ee also* Guttmacher Inst., An Overview of Minors' Consent Law as of July 1, 2018, https://www.guttmacher.org/state-policy/explore/overview-minors-consent-law.

To be sure, ORR is required to "ensur[e] that the interests of the child are considered in decisions and actions relating to the care and custody of" minors in its custody. 6 U.S.C. § 279(b)(1)(B). However, that statutory responsibility does not authorize the agency to displace state laws and policy judgments governing abortion access. "[A]n agency literally has no power to act, let alone pre-empt the validly enacted legislation of a sovereign State, unless and until Congress confers power upon it" to do so. *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). ORR has cited no statutory authority that would permit agency preemption in matters involving the States' historic powers over family law and child welfare. *See Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581 (1979).

This is case is not one in which state procedures or standards are alleged to violate federal law. To the contrary, the state laws here are consistent with decades of well-established Supreme Court precedent. Nor do these state laws "govern[] the economic aspects of domestic relations," such that they "must give way to clearly conflicting federal enactments." *Ridgway v. Ridgway*, 454 U.S. 46, 55 (1981). Instead, ORR's policy wholly supersedes official state action in "areas of traditional state

14

concern, areas having nothing to do with the regulation of commercial activities." *United States v. Lopez*, 514 U.S. 549, 577 (1995). The policy thus raises substantial federalism concerns and undermines the representative effectiveness of state governments. *See id.*

In addition, ORR's "best interests" analysis here does not resemble an individualized and independent judgment made "after a careful investigation" into a particular child's circumstances as is constitutionally mandated. *See Parham v. J.R.*, 442 U.S. 584, 618 (1979). For example, in rejecting J.P.'s request to terminate a pregnancy resulting from rape, ORR's director opined that abortion is "the destruction of an unborn child's life," posited that "many women go on to experience [abortion] as a devastating trauma," and stated that J.P.'s request asks ORR "to participate in killing a human being in our care." (PA 22-23.) The only reference to J.P.'s individualized circumstances was a wholly unsubstantiated assertion that an abortion "will not undo or erase the memory of the violence committed against her, and it may further traumatize her." (PA 23.)

Indeed, ORR's director has admitted that he has never found that an abortion would be in the best interests of a minor, in part because he

believes "that abortion is the destruction of human life." (GA 229.) The director's position regarding individual requests for access to abortion services is thus pre-determined by his own moral opposition to abortion. A rigid approach of that type is not an individualized "best interests" evaluation that comports with minimum constitutional standards.

Contrary to ORR's assertions (ORR Br. at 49-50), its statutory responsibility for the health and welfare of children in its custody does not justify the challenged policy. ORR's custodial role does not authorize limitless control; rather, the agency's authority is "subject, of course, to the restrictions governing natural parents." *Parham*, 442 U.S. at 619. Parental rights have "never been regarded as absolute, but rather are limited by the existence of an actual, developed relationship with a child, and are tied to the presence or absence of some embodiment of family." *Troxel v. Granville*, 530 U.S. 57, 88 (2000). A parent's rights with respect to her child are further limited by "the child's own complementary interest" in the child's "welfare and protection." *Id.* ORR fails to explain why a federal agency is entitled to review and approve a minor's decision to terminate her pregnancy in circumstances when the same minor's parents would not be entitled to consent and notification. While ORR

16

characterizes itself as having a "*de facto* parent role," the agency in fact seeks to assert far greater rights. ORR Br. at 49-50.

ORR also suggests (*id*. at 34) that it is obligated to review and consent to the determinations of minors as part of the process of determining whether they are sufficiently mature to make the decision to terminate a pregnancy. A given State's decision not to impose a parental consent or notification requirement reflects that State's sovereign determination to respect the reproductive choices of pregnant minors. Such a judgment militates *against* second-guessing a minor's decision by requiring a separate federal agency review. In any event, the ORR director's policy amounts to an impermissible blanket prohibition on access to abortion services that does not actually take a minor's maturity or individual circumstances into account.

**B.    ORR's Policy Infringes on the Sovereignty of States That Require Parental Involvement in Abortion Decisions Because the Agency Disregards Parental Consent and Bypass Determinations.**

ORR's nationwide policy also affects unaccompanied immigrant minors residing in over thirty-five States—including amici Delaware, Illinois, Iowa, Maryland, Massachusetts, North Carolina, Pennsylvania, and Virginia—that currently require parental notice or consent prior to obtaining an abortion. *See* Planned Parenthood, *Parental Consent and Notification Laws*, *supra*. Consistent with long-standing Supreme Court precedent, all States with parental involvement statutes have judicial or physician bypass procedures that allow a minor to obtain an abortion without notifying her parents.

Although ORR argues (ORR Br. at 33-34) that its policy is analogous to "the ability of States to evaluate the maturity level and best interests in individual cases through bypass regimes," the agency does not have statutory authority to implement its own bypass scheme. Accordingly, ORR has acted unlawfully in disregarding the States' existing parental involvement statutes. First, ORR's policy allows its director to deny an abortion request even when a minor notifies and obtains the consent of her parents (Dkt. 121-17), even though state law

18

does not require an independent analysis of maturity or best interests in such cases.

Second, ORR's policy allows the director to review and deny abortion requests where an unaccompanied minor has availed herself of a State's bypass process and obtained a state-court or medical determination that she is sufficiently mature to make an independent decision to terminate her pregnancy or that the decision would be in her best interests. (*See, e.g.*, Dkt. 30, at 2-3.) ORR's agency-consent requirement thus refuses to give full faith and credit to the state-court determinations made as a result of judicial bypass procedures, and overrides a state's legislative judgments allowing physicians to evaluate the maturity and best interests of their patients.

Even more troublingly, ORR has actively interfered with minors' access to state-court bypass proceedings. For example, the director has told shelters that they must obtain his consent before allowing minors to meet with attorneys about a bypass proceeding. (Dkt. 5-5, at 4; Dkt. 5-10, Dkt. 56-6, at 2; *see also* PA 46-47; GA 225-226.) ORR has also attempted to strip state courts of their jurisdiction to adjudicate judicial bypass proceedings. In January 2018, a pregnant unaccompanied minor in ORR

custody initiated a judicial bypass action in Texas. After the state court set a bypass hearing date, ORR refused to produce the minor for the hearing and removed the proceeding to federal court. The Fifth Circuit allowed removal for the limited purpose of adjudicating ORR's defense that the minor no longer wished to obtain an abortion. At the same time, the court warned that "principles of federalism and the well-worn notion that federal courts should avoid family law issues" prohibit the wholesale removal of state-court judicial bypass proceedings. *See Doe v. ORR*, 884 F.3d 269, 273 n.8 (5th Cir. 2018) (per curiam).

On remand, the district court determined that the minor in fact no longer wished to have an abortion and dismissed the case. At the same time, the court criticized ORR for refusing to transport the minor to her bypass hearing and for prolonging the litigation through removal. The court explained that "[i]t should be obvious that the implementation and enforcement of a Texas Family Code statute is within the jurisdiction of the Texas state courts, and further, that federal courts should avoid family law issues." Order of Dismissal at 2, *Doe v. ORR*, No. 18-cv-26, Dkt. 36 (S.D. Tex. Mar. 12, 2018). As the court observed, a minor's desire to have an abortion "is an inherent factor of a judicial bypass hearing"

20

and "would have been resolved without delay by the state court if the original judicial bypass hearing had proceeded." *Id.*

In the absence of a federal statute validly preempting state law, ORR is not entitled to disregard the States' legislative, judicial, and policy determinations in favor of its own judgment regarding minors' access to abortion services. Nor is a federal agency authorized to interfere with state-court proceedings, much less to obstruct litigants' access to state courts or to strip jurisdiction from state courts. ORR's federal agency-consent requirement is an affront to the constitutional rights of minors in ORR custody and to the sovereignty of the States in which those minors are being housed.

## POINT II

### THE ORR DIRECTOR'S DENIAL OF ALL REQUESTS TO ACCESS ABORTION SERVICES IS AN UNDUE BURDEN ON THE RIGHT TO CHOOSE TO TERMINATE A PREGNANCY

The undue burden standard, as set out by the Supreme Court in *Casey* and reaffirmed in *Whole Woman's Health*, provides that a government policy is unconstitutional if it "plac[es] a substantial obstacle in the path of a woman seeking an abortion." *Casey*, 505 U.S. at 877

(plurality op.); *Whole Woman's Health*, 136 S. Ct. at 2309. "Regardless of whether exceptions are made for particular circumstances, a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability." *Casey*, 505 U.S. at 879 (plurality op.). And it is well-settled that "the constitutional protection against unjustified state intrusion into the process of deciding whether or not to bear a child extends to pregnant minors as well as adult women." *Hodgson v. Minnesota*, 497 U.S. 417, 435 (1990) (op. of Stevens, J.).

ORR does not deny that its director has unilaterally prohibited all pregnant unaccompanied minors in federal custody from accessing abortion services; indeed, the ORR director maintains that he has the authority to override a minor's decision to obtain an abortion in any circumstance, so long as she is in ORR custody. (GA 230.) Even if ORR had the authority to impose an agency-consent requirement that does not exist under state law—which it does not—the ORR director's policy functions as an impermissible veto over the decision of a minor and her doctor to terminate a pregnancy. *See Bellotti v. Baird*, 443 U.S. 622, 643 (1979) (plurality op. by Powell, J.). The federal government "does not have the constitutional authority to give a third party an absolute, and

22

possibly arbitrary, veto over the decision of the physician and his patient to terminate the patient's pregnancy, regardless of the reason for withholding the consent." *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 74 (1976). Moreover, "[a] state policy favoring childbirth over abortion is not in itself a sufficient justification for overriding the woman's decision or for placing obstacles—absolute or otherwise—in the pregnant woman's path to an abortion." *Hodgson*, 497 U.S. at 435 (quotation marks omitted). Allowing the ORR director to substitute his judgment "for an individual decision that a woman has a right to make for herself" would nullify these constitutional limitations on governmental power. *Id.*

ORR contends that its policy does not impose an undue burden because an unaccompanied immigrant minor seeking an abortion "could have avoided [her] custody by declining to enter the United States unlawfully and . . . may take steps to end [her] custody at any time by officially requesting voluntary departure from federal custody or by working with the government to identify, vet, and approve a sponsor." ORR Br. at 40. None of these arguments is availing.

First, the reason why a woman is in federal custody is immaterial to determining the scope of her constitutional right to access abortion services. As ORR concedes (*see id.* at 41-42), the government must allow incarcerated women to access abortion services despite the fact that those women presumably could also have "avoided custody" by declining to commit a criminal offense. Similarly, ORR agrees (*see id.* at 42) that an adult woman in immigration custody would be able to choose to terminate a pregnancy even though she also may have entered the country unlawfully. ORR fails to explain why children who fled their homes— often from violence and abuse—must be forced to carry pregnancies to term against their will simply because they entered the United States unlawfully.

Second, the district court correctly determined that ORR's proposed alternative of voluntary departure "conditions the exercise of [unaccompanied minors'] constitutional rights on their willingness to relinquish any claim that may entitle them to remain in the United States." (GA 263.) *See also Garza*, 874 F.3d at 740 (Millett, J., concurring). ORR's assertion that "immigration law can impose difficult choices between sacrificing liberty and obtaining immigration relief"

24

drastically minimizes the liberty interest at stake in this case. *See* ORR Br. at 42-43 (citing *Demore v. Kim*, 538 U.S. 510, 530 n. 14 (2005)).

*Demore* involved a challenge to a statute authorizing mandatory detention during removal proceedings for certain immigrants with criminal records. *See* 538 U.S. at 513. The Supreme Court upheld the statute in part because of the relatively short time frame of most mandatory detentions—approximately six weeks in most cases, or five months in the event of appeal. *Id.* at 530-31. The court rejected the argument that "the length of detention required to appeal may deter aliens from exercising their right to do so," noting that such "difficult judgments" are common in the legal system. *Id.* at 530 n.14. To be sure, requiring an immigrant to choose between departure and an additional three and a half months of immigration detention to pursue an appeal is a substantial and difficult choice. However, it is not comparable to forcing a child to remain pregnant and give birth—including when her pregnancy resulted from rape—in order to pursue a claim for immigration relief.

In any event, voluntary departure does not, as a matter of practice, allow an unaccompanied minor to obtain an abortion because it is a

protracted legal process that can take months to complete. A minor may request voluntary departure only after she has been placed in removal proceedings, and voluntary departure may occur only after an immigration judge holds a hearing and determines that the minor is eligible. *See* 8 U.S.C. §§ 1229c(a)(1), (b)(1), 1232(a)(5)(D)(ii); 8 C.F.R. § 1240.26. If the immigration judge grants the voluntary departure request, the federal government is required to "safely repatriate" unaccompanied immigrant minors, *see* 8 U.S.C. § 1232(a), a process which usually involves the home country's consular office. *See* Congressional Research Service, *Unaccompanied Alien Children: An Overview* at 7-8 (Jan. 18, 2017).[5] An individual minor has no control over when the federal government initiates removal proceedings, when the immigration judge holds a hearing and renders a decision, or when her home country's consulate responds to the request for assistance. Throughout this period, the minor remains in ORR custody.

Thus, by the time a minor successfully completes voluntary departure, she will likely be past the legal cutoff for receiving an abortion

---

[5] https://fas.org/sgp/crs/homesec/R43599.pdf.

in her home country. Alternatively, she may not be able to receive an abortion because the procedure is unlawful in her home country. And even if the minor somehow is able to receive an abortion, ORR's policy would have compelled her to remain pregnant pending the completion of the voluntary-departure process and to suffer the attendant physical, mental, and emotional toll. Thus, voluntary departure is not a meaningful or constitutionally adequate alternative.

Finally, the district court also correctly rejected ORR's argument that the availability of release to a sponsor cures any burden caused by ORR's policy. (GA 264.) *See also Garza*, 874 F.3d at 739 (Millett, J., concurring). ORR's contention (ORR Br. at 43-44) that a sponsor can help a minor "when considering and pursuing such a personal and sensitive decision as abortion"—even if true—is not a permissible justification for barring a minor's access to abortion in the interim.

There is also no basis to conclude that the sponsorship process is akin to the bypass procedures that the Supreme Court has held could cure the burden of a consent requirement. *See Garza*, 874 F.3d at 755 (Kavanaugh, J., dissenting). To pass constitutional muster, a consent requirement must include a bypass procedure that would allow a

pregnant minor to demonstrate either "(1) that she is mature enough and well enough informed to make her abortion decision, in consultation with her physician, independently of her parents' wishes or (2) that even if she is not able to make this decision independently, the desired abortion would be in her best interests." *Bellotti*, 443 U.S. at 643-44 (plurality op. by Powell, J.). Further, the proceeding must ensure "anonymity and sufficient expedition to provide an effective opportunity for an abortion to be obtained." *Id*. at 644 (plurality op. by Powell, J.).

The sponsorship process shares none of the characteristics of a constitutionally adequate bypass procedure. First, bypass procedures must be made available to all minors. *Id*. at 648 (plurality op. by Powell, J.). By contrast, an unaccompanied immigrant minor may not be able to identify any suitable sponsors to whom she could be released.

Second, bypass procedures generally provide procedural protections to minors that have no analogue under the sponsorship release procedures. For example, States with judicial bypass regimes commonly require all cases to be filed confidentially, and forbid any court officer from disclosing to anyone that the minor is or has ever been pregnant or that she ever wanted an abortion. *See e.g.,* Colo. Rev. Stat. § 12-37.5-

28

107(2)(g); Fla. Code § 390.01114(4)(f); Rules and Forms for a Judicial Bypass of the Parental Notice and Consent under Chapter 33 of the Texas Family Code ("Tex. Rule") 1.4(a). States with physician bypass procedures impose comparable confidentiality requirements. *See, e.g.*, Md. Code Ann., Health-Gen. § 20-103(a), (e). Here, ORR has pointed to no regulation or guideline that would forbid such disclosure to potential sponsors, or that would forbid ORR from asking potential sponsors about their views on the minor's request for an abortion. To the contrary, ORR has adamantly argued that it has the authority to notify parents, potential sponsors, and others about minors' decisions to have an abortion.[6] *See* ORR Br. at 45-47.

---

[6] ORR further contends that notice requirements do not require a bypass procedure. *See* ORR Br. at 45. But every State that has a parental notice requirement provides a bypass procedure, and the Supreme Court has never upheld a parental notice statute that lacked a bypass provision. *See* Br. for Appellees at 48-49. Even the statute at issue in *Planned Parenthood of the Blue Ridge v. Camblos*, a case on which ORR relies, included a bypass provision. 155 F.3d 352, 378 (4th Cir. 1998) (en banc).

There is also no basis for ORR's assertion that its practice of giving notice "cannot obstruct the abortion" because an unaccompanied minor's "parent does not have custody of the child." ORR Br. at 46. ORR's policy is to notify parents *and* potential sponsors about the abortion decision. And the record in this case shows that sponsors, like objecting parents, are capable of using threats and intimidation to force a minor to keep an

Third, judicial bypass States commonly allow or require a court to appoint a guardian ad litem or an attorney ad litem to represent the minor at a hearing. *See, e.g.*, Colo. Rev. Stat. § 12-37.5-107(2)(b); Mo. Rev. Stat. § 188.028(2)(1)-(2); Tex. Rule 2.3(a)-(b). Here, ORR has not identified any regulation or guideline that would provide equivalent representation to a minor in the course of the sponsorship approval process.

Fourth, bypass States generally require that courts and medical professionals make bypass determinations quickly. *See, e.g.*, Fla. Code § 390.01114(4)(b)(1); Mo. Rev. Stat. § 188.028(2)(2); Texas Rule 2.5(f); Tex. Fam. Code § 33.003(h). In addition, bypass procedures provide for speedy appeals and alternative layers of review. Fla. Code § 390.01114(4)(b)(2); Mo. Rev. Stat. § 188.028(2)(5); Texas Rule 3.3. Here, ORR has not identified any regulation or guideline that requires release to a sponsor within a certain time frame. ORR has also failed to identify a regulation or guideline that permits an unaccompanied immigrant

---

unwanted pregnancy even before the child has been released into the sponsor's physical custody. (PA 20 (noting that J.P.'s mother and sponsor "threatened to beat her" if she obtained an abortion).)

minor to challenge the denial of a particular sponsor. And critically, ORR has not identified any time frame after which it must cease blocking a minor's access to abortion services.

Finally, ORR is both the agency that refuses to permit a minor to obtain an abortion and the agency that reviews and approves release to a hypothetical sponsor. It is not an independent decision-maker equivalent to a physician or a state court. Thus, the sponsorship procedure may itself allow another opportunity for the agency to exercise an "absolute" and "arbitrary" veto over a minor's independent decision. *Bellotti*, 443 U.S. at 644 (plurality op. by Powell, J.). As the district court correctly found, "the sponsorship option does not allow the [minor] any control over her reproductive decisions, and therefore does not cure the constitutional infirmity inherent in the ORR policy." (GA 264.)

This Court should affirm the district court's preliminary injunction in light of the substantial constitutional interests implicated by ORR's policy. There is simply no merit to ORR's concerns about the consequences of the injunction. First, ORR is wrong to suggest that the district court ordered an "abortion-focused remedy" for all pregnant unaccompanied minors. ORR Br. at 30. Nothing prevents ORR from

providing pregnancy-related services to those unaccompanied immigrant minors who wish to carry their pregnancies to term. The district court merely ordered ORR to allow minors to choose whether to have an abortion or proceed with a pregnancy without unwarranted interference by the federal government.

Second, there is no basis for ORR's argument that "[f]inding an undue burden here would constitutionally mandate what would amount to abortion tourism." *Id.* at 45. There is no evidence whatsoever that any unaccompanied minor has entered the country to access abortion services. Many girls do not learn that they are pregnant until they are apprehended and submit to a medical examination in the United States. (GA 92, 94, 269.) Others may become pregnant while trying to enter the country or after having arrived.[7] ORR's concern about "abortion tourism" rings especially hollow in light of its director's attempts to persuade a

---

[7] *See, e.g.*, Michael Grabell & Topher Sanders, *Immigrant Youth Shelters: "If You're a Predator, It's a Gold Mine,"* ProPublica (July 27, 2018), https://www.propublica.org/article/immigrant-youth-shelters-sexual-abuse-fights-missing-children; Amnesty International, *Invisible Victims: Migrants on the Move in Mexico* 15 (Apr. 2010), *available at* https://fusiondotnet.files.wordpress.com/2014/09/amr41014 2010eng.pdf.

minor not to have an abortion by telling her that "the baby would be a U.S. citizen." (Dkt. 129-1, at 53-54 (Tr. 237-238).) ORR cannot impose its policy preference for childbirth onto children who do not wish to be pregnant.

## CONCLUSION

The district court's preliminary injunction order and class certification decision should be affirmed.

Dated:   New York, NY
              August 6, 2018

                                        Respectfully submitted,

                                        BARBARA D. UNDERWOOD
                                          *Attorney General*
                                          *State of New York*


                              By:   */s/ Ester Murdukhayeva*
                                        ESTER MURDUKHAYEVA
                                        Assistant Solicitor General

                                        28 Liberty Street
                                        New York, NY 10005
                                        (212) 416-6279

ANISHA S. DASGUPTA
  *Deputy Solicitor General*
ESTER MURDUKHAYEVA
  *Assistant Solicitor General*
      *of Counsel*

(*Counsel listing continues on next page.*)

34

XAVIER BECERRA
  *Attorney General*
  *State of California*
1300 I Street
Sacramento, CA 95814

GEORGE JEPSEN
  *Attorney General*
  *State of Connecticut*
55 Elm Street
Hartford, CT 06106

MATTHEW P. DENN
  *Attorney General*
  *State of Delaware*
Carvel State Bldg, 6th Fl.
820 North French Street
Wilmington, DE 19801

RUSSELL A. SUZUKI
  *Attorney General*
  *State of Hawai'i*
425 Queen Street
Honolulu, HI 96813

LISA MADIGAN
  *Attorney General*
  *State of Illinois*
100 W. Randolph Street, 12th Fl.
Chicago, IL 60601

THOMAS J. MILLER
  *Attorney General*
  *State of Iowa*
1305 E. Walnut Street
Des Moines, IA 50319

JANET T. MILLS
  *Attorney General*
  *State of Maine*
6 State House Station
Augusta, ME 04333

BRIAN E. FROSH
  *Attorney General*
  *State of Maryland*
200 Saint Paul Place
Baltimore, MD 21202

MAURA HEALEY
  *Attorney General*
  *Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

GURBIR S. GREWAL
  *Attorney General*
  *State of New Jersey*
Richard J. Hughes Justice Complex
25 Market Street, Box 080
Trenton, NJ 08625

HECTOR BALDERAS
  *Attorney General*
  *State of New Mexico*
408 Galisteo Street
Santa Fe, NM 87501

JOSHUA H. STEIN
  *Attorney General*
  *State of North Carolina*
P.O. Box 629
Raleigh, NC 27602

ELLEN F. ROSENBLUM
  *Attorney General*
  *State of Oregon*
1162 Court Street, N.E.
Salem, OR 97301

JOSH SHAPIRO
  *Attorney General*
  *Commonwealth of Pennsylvania*
Strawberry Square, 16th Fl.
Harrisburg, PA 17120

THOMAS J. DONOVAN, JR.
  *Attorney General*
  *State of Vermont*
109 State Street
Montpelier, VT 05609

MARK R. HERRING
  *Attorney General*
  *Commonwealth of Virginia*
202 North Ninth Street
Richmond, VA 23219

ROBERT W. FERGUSON
  *Attorney General*
  *State of Washington*
P.O. Box 40100
Olympia, WA 98504

KARL A. RACINE
  *Attorney General*
  *District of Columbia*
One Judiciary Sq.
441 4th Street, N.W.
Washington, DC 20001

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Oren L. Zeve, an employee in the Office of the Attorney General of the State of New York, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 6,331 words and complies with the typeface requirements and length limits of Rule 32(a)(5)-(7).


                   /s/ Oren L. Zeve

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the accompanying Brief for Amici Curiae by using the CM/ECF system on August 6, 2018.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:    August 6, 2018
          New York, NY


          /s/ Ester Murdukhayeva